# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

RAHSHEDA FLOWERS,

**Plaintiff**

v.

BALTAX 2017, LLC, et al.,

**Defendants**

CIVIL NO. JKB-19-0618

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Rahsheda Flowers ("Plaintiff") filed suit against Defendants Aaron Naiman ("Mr. Naiman"), Naiman & Naiman, P.A. ("Naiman Firm"), and Baltax 2017, LLC ("Baltax") alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.*, and the Maryland Consumer Debt Collection Act, Md. Code. Ann., Com. Law. § 14-201, *et seq.* Plaintiff's claims relate to Defendants' attempt to foreclose Plaintiff's right of redemption to her property and collect payments from Plaintiff's mortgage servicer in relation to that foreclosure litigation. Plaintiff claims that Baltax was not the owner of the property, had no legal right to attempt to foreclose her right of redemption, and had no legal right to collect any money from her mortgage servicer in connection with that litigation.

Plaintiff seeks actual and statutory damages, as well as reasonable attorney's fees and costs. Defendants filed a motion to dismiss, and the matter is fully briefed. No hearing is required. *See*

Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, Defendants' motion to dismiss will be granted in part and denied in part.

## I. Background[1]

Ms. Flowers had a municipal lien placed on her property due to an allegedly delinquent water bill. (Compl. ¶ 18, ECF No. 1.) Plaintiff's property was subsequently sold at a municipal lien sale to Dean Properties 2015, LLC. (*Id.*) This sale was subject to Plaintiff's right of redemption to regain the property by paying her outstanding bills and associated fees. (*Id.*)

On October 13, 2017, Dean Properties ceased doing business and forfeited its right to bring lawsuits in Maryland. (*Id.* ¶ 19.) On February 26, 2018, Mr. Naiman, an attorney, and the Naiman Firm filed a lawsuit in Baltimore City on behalf of Baltax seeking to foreclose Plaintiff's right of redemption to her property. (*Id.* ¶¶ 16, 21.) According to Plaintiff, Baltax is a company that "has filed hundreds of tax sale foreclosure lawsuits." (*Id.* ¶ 28.) Baltax hired Mr. Naiman and the Naiman Firm and directed them to attempt to collect "debt arising from Plaintiff's water bill" from Plaintiff. (*Id.* ¶ 31, 42.) Plaintiff asserts that Mr. Naiman, the Naiman Firm, and Baltax are jointly and severally liable to the Plaintiff for all alleged violations related to the collection of this debt. (Id. ¶¶ 41–49.)

In Baltax's lawsuit to foreclose Plaintiff's right of redemption to her property, Defendants[2] claimed that Baltax had purchased Plaintiff's property on May 15, 2017. (*Id.* ¶ 20.) Plaintiff disputes Baltax's claim of ownership. (*Id.*). Instead, she alleges Baltax "had no legal interest in

---

[1] The facts in this section are taken from the Complaint and construed in the light most favorable to Plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).
[2] The Court follows the Plaintiff's practice in referring to Mr. Naiman, the Naiman Firm, and Baltax collectively as "Defendants." (Compl. ¶ 2.)

2

or rights to the [p]roperty," and thus had no right to bring a lawsuit to foreclose her right of redemption. (*Id.* ¶¶ 3, 20–22.)

After bringing the lawsuit to foreclose Plaintiff's right of redemption, Mr. Naiman and the Naiman Firm contacted Plaintiff's mortgage servicer on behalf of Baltax and demanded payment "in order to redeem the tax sale certificate on the [p]roperty." (*Id.* ¶ 23.) Specifically, Defendants requested "payment of legal fees, title examination fees, closing fees, publication fees, filing fees, judgment report fees, postage fees, private process server fees, and posting fees." (*Id.*) Plaintiff's mortgage servicer paid the requested fees in order to redeem the property's tax sale certificate and then assessed those fees and others related to "Defendants' unlawful collection efforts" against Plaintiff. (*Id.* ¶¶ 23–25.)

According to Plaintiff, Defendants were not legally permitted to attempt to foreclose her right of redemption or collect fees through her mortgage servicer because: (1) Baltax did not own Plaintiff's property or have "legal interest in or rights to the [p]roperty," (*id.* ¶¶ 20–23); and (2) Defendants were not licensed in Maryland as collection agencies under Maryland law, (*id.* ¶¶ 29, 30). Plaintiff claims Defendants' statements, which were made in an effort to collect the debt, were "false, deceptive, and misleading" because Defendants knew Baltax did not have a legal right to Plaintiff's property. (*Id.* ¶¶ 20–23.)

Plaintiff alleges that she incurred damages through the "unlawful charges assessed" to her by her mortgage servicer due to Defendants' false statements about the debt allegedly owed. (*Id.*

3

¶¶ 53, 58.) She also alleges that she suffered "mental anguish and emotional distress" from Defendants' unlawful actions. (*Id.* ¶ 53.)

The Complaint puts forward two counts. Count I alleges violations of the Maryland Consumer Debt Collection Act (MCDCA). (*Id.* ¶¶ 50–53.) Count II alleges violations of the Fair Debt Collection Practices Act (FDCPA). (*Id.* ¶¶ 54–58.)

## II. *Legal Standard*

Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and Local Rule 105 for failure to state a claim. (Mot. Dismiss. at 1, ECF No. 13.) A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. An inference of the mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. Courts must "accept the well-pled allegations of the complaint as true, . . . constru[ing] the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra*, 120 F.3d at 474. "A pleading that offers 'labels and conclusions' or . . . 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (citation omitted) (quoting *Twombly*, 550 U.S. at 555, 557). Courts need not accept legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

The Court will address the sufficiency of the pleadings for the federal claim followed by a similar assessment for the state claim.

*III. Analysis*

*A. Fair Debt Collection Practices Act (FDCPA) (Count II)*

Count II of the Complaint alleges Defendants violated multiple provisions of the FDCPA. (Compl. ¶ 33.) Plaintiff claims that, in attempting to foreclose her right of redemption and demanding fees from her mortgage servicer, Defendants violated the Act by using "false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e. Specifically, Plaintiff alleges Defendant violated 15 U.S.C. § 1692e(2), (4), (5), (6), (9), and (10), which provide a non-exclusive list of specific behaviors that violate the FDCPA. Plaintiff also alleges Defendants violated 15 U.S.C. § 1692f, which forbids "us[ing] unfair or unconscionable means to . . . attempt to collect [a] debt."

An FDCPA claim requires "'(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt [] collector[,] . . . and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012) (quoting *Dikun v. Streich*, 369 F. Supp. 2d 781, 784–85 (E.D. Va. 2005)), *aff'd sub nom. Lembach v. Bierman*, 528 F. App'x 297 (4th Cir. 2013). The court considers each of these elements in turn.

*1. Consumer Debt*

Plaintiff's allegations satisfy the first element of an FDCPA claim because overdue municipal water bills based upon the amount of water consumed qualify as consumer debts. Under the FDCPA, a consumer is "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C.A. § 1692a(3). "Debt" is defined under the statute as an "obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household

5

purposes ..." 15 U.S.C.A. § 1692a(5). Lacking any Fourth Circuit precedent on the issue, the parties and the Court look to the decisions of other circuits in determining whether municipal water bills qualify as consumer debt under the FDCPA. *See Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 539 n.2 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 755 (2018), *and cert. denied*, 138 S. Ct. 755 (2018) ("[C]ourts may consider decisions from other circuits in the absence of binding precedent.").

Defendants argue that debts related to unpaid municipal water charges do not qualify as "consumer debts" under the FDCPA and cite to *Boyd v. J.E. Robert Co.*, 765 F.3d 123, 126 (2d Cir. 2014) in support of this argument. (Mot. Dismiss. Mem. at 6–7.) *Boyd* states that "mandatory water and sewer charges imposed by New York City as an incident to property ownership" are not consumer debts under the FDCPA because such a transaction resembles that of a "taxpayer and taxing authority." 765 F.3d at 126. Plaintiff argues that unpaid water bills are consumer debts under the FDCPA, (Opp'n Mot. Dismiss at 16-19, ECF No. 15), citing to the Third Circuit decision *Piper v. Portnoff Law Assocs.*, 396 F.3d 227 (3d Cir. 2005). *Piper* states that homeowners who incur debts "based on the *amount* of water they chose to use" are subject to the FDCPA. 396 F.3d at 233 n.8 (emphasis added).

Despite Defendants' claims to the contrary, these decisions are not in conflict. In fact, *Boyd* directly distinguishes itself from *Piper* and other Third Circuit cases due to the fact that water charges in New York City are incidental to property ownership, whereas individuals in Pennsylvania must request water service. *Boyd*, 765 F.3d at 126 n.4. Like Pennsylvania, Baltimore City charges individuals for water based on the amount of water consumed. Baltimore City Code, Art 24 § 1-2(a) states: "The Director of Public Works shall: (1) assess the water rates or charges on all buildings and premises where the rates are established by law." In addition:

> The Director of Public Works must ensure that: (1) every consumer's accessible water meter is actively read and the actual

6

> reading accurately recorded at least once a month; and (2) no water
> bill based on an estimated rather than actual reading is sent to any
> residential consumer whose water meter is accessible to Department
> of Public Works employees when they attempt to read the water
> meter.

Baltimore City Code, Art 24 § 1-2(b). While there are not facts in the Complaint describing the exact method by which Plaintiff's water bill was computed, nothing suggests that Plaintiff's water bill was not based upon her consumption of water as measured by a water meter, pursuant to Baltimore City Code 24 § 1-2. Nor do Defendants raise this argument in their motion to dismiss. Therefore, at this stage, this Court determines that Plaintiff's debt arising from unpaid water bills could plausibly qualify as a consumer debt under the FDCPA. *See also Harney v. Kramer & Frank, P.C.*, Civ. No. 16-1614, 2017 WL 1477145, at *4 (E.D. Mo. Apr. 24, 2017) (discussing *Boyd* and *Piper* and determining that sewer charges based on consumption qualify as consumer debt under the FDCPA).

### 2. *Debt Collector*

Plaintiff's allegations also satisfy the second element of an FDCPA claim: Defendants are debt collectors under the FDCPA. Under the FDCPA, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C.A. § 1692a(6). Relevant to this discussion, the definition of "debt collector" also states, "For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." *Id.* An attempt to foreclose qualifies as debt collection activity, *Stewart*, 859 F. Supp. 2d at 761, and the definition of "debt collector" encompasses lawyers and law firms

7

conducting "debt-collecting activity [via] litigation," *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 229 (4th Cir. 2007).

Defendants argue that they are exempt from the FDCPA "because the principal purpose of the Naiman Defendants' business, as pled, concerns the enforcement of security interests." (Mot. Dismiss. Mem. at 5.) The Supreme Court recently addressed the question of whether "one principally involved in 'the enforcement of security interests'" is a debt collector subject to the full coverage of the FDCPA. *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1031 (2019). The Court held that the FDCPA—with the exception of section 1692f(6)—does not cover those whose principal purpose is the enforcement of security interests when those entities are engaged in "no more than" nonjudicial foreclosure proceedings. *Id.* The Court clarified, "whether those who judicially enforce mortgages fall within the scope of the primary definition is a question we can leave for another day," and cited to the Tenth Circuit's decision in the same case. *Id.* at 1039. The Court noted the Tenth Circuit recognized that "the availability of a deficiency judgment is a potentially relevant distinction between judicial and nonjudicial foreclosures." *Id.* (citing *Obduskey v. Wells Fargo*, 879 F.3d 1216, 1221–1222 (10th Cir.), *aff'd sub nom. Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029 (2019)).

Plaintiff and Defendants agree that the action complained of here concerns only a judicial foreclosure. (Mot. Dismiss. Mem. at 5–6; Opp'n Mot. Dismiss. Mem. at 8, ECF No. 15). Defendants do not address the fact that the holding in *Obduskey* concerns only the nonjudicial enforcement of security interests. Instead, Defendants argue that *Obduskey* means security-interest enforcers are not debt collectors unless section 1692f(6) is at issue. (Reply at 2). As explained above, this is not the holding of *Obduskey*, and nothing in the Court's holding concerns the judicial enforcement of security interests, which is at issue here. *See Cooke v. Carrington Mortg. Servs.*,

Civ. No. TDC-18-0205, 2019 WL 3241128, at *2 (D. Md. July 18, 2019) ("The Supreme Court's holding in *Obduskey* extends only to security-interest enforcers engaged in nonjudicial foreclosure proceedings in a manner required by state law."). Therefore, *Obduskey* does not mandate dismissal of Plaintiff's FDCPA claims.

Defendants also argue that they are not debt collectors because they did not demand that Plaintiff make a payment to them. (Mot. Dismiss. Mem. At 6.) However, the FDCPA expressly covers both direct and indirect debt collection practices. 15 U.S.C.A. § 1692a. The fact that Defendants requested payment of fees through Plaintiff's mortgage servicer, which were then assessed on Plaintiff, does not insulate Defendants from liability as debt collectors. Therefore, Plaintiff adequately pleads the second element of an FDCPA claim.

### 3. *Violations of §§ 1692e and 1692f*

Plaintiff alleges Defendants violated the FDCPA because: (1) Baltax did not have a legal right to Plaintiff's property, but Defendants falsely claimed it did; and (2) Defendants lacked a license under the Maryland Collection Agency Licensing Act (MCALA), Md. Code Ann., Bus. Reg., § 7-101 *et seq*. The Court will consider each argument in turn.

#### *a. Misrepresentations*

The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. To establish a FDCPA violation based on a false statement, Plaintiff must plausibly allege that the challenged statements were false and "material." *Stewart*, 859 F. Supp. 2d at 762; *Weisheit v. Rosenberg & Assocs.*, Civ. No. JKB-17-0823, 2017 WL 5478355, at *6 (D. Md. Nov. 15, 2017). In the Fourth Circuit, "a representation is 'material' if it would affect a least sophisticated consumer's decision-making with regard to her debt." *Weisheit*, 2017 WL 5478355 at *6; *see also*

9

*United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135–36 (4th Cir. 1996). Only misstatements concerning the amount or nature of the debt itself are material. *See, e.g., Stewart*, 859 F. Supp. 2d at 764 (finding a misrepresentation was not material where it did not involve a "substantive error with respect to the debt or the timing of foreclosure"); *Lembach*, 528 F. App'x at 303 (affirming a material misrepresentation must have a "connection to the debt at issue").

Plaintiff alleges Defendants made the following misrepresentations: (1) "Defendants falsely alleged that the [p]roperty was sold on May 15, 2017 to Baltax," (Compl. ¶ 20); (2) "in the City Lawsuit, Defendants asserted that Baltax had the right to foreclose the redemption of the [p]roperty," (Compl. ¶ 21); (3) "Defendants asserted in the City Lawsuit the right to have title to the Property vested in Baltax, although the Property was not sold to Baltax and although Baltax had no legal interest in or rights to the [p]roperty," (Compl. ¶ 22); and (4) Defendants asserted they were owed fees related to the foreclosure lawsuit from Plaintiff's mortgage servicer, (Compl. ¶ 23). Such statements would undoubtedly qualify as "material" because they concern the nature of the debt itself and would impact a consumer's decision-making.

Section 1692e(2) prohibits "[t]he false representation of (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." If Defendants did not have a right to Plaintiff's property or a right to foreclose her right of redemption, their assertion to the contrary would be a material misrepresentation about the character and legal status of the debt in violation of § 1692e(2). Demanding Plaintiff's mortgage servicer pay money "in order to redeem the tax sale certificate" on Plaintiff's property, (Compl. ¶ 23), would qualify as unlawfully "represent[ing] . . . that nonpayment of any debt will result in . . . the seizure, garnishment, attachment, or sale of any property . . . ," in violation of § 1692e(4). Such statements would also constitute "threaten[ing]

to take [an] action that cannot legally be taken," § 1692e(5). Making a misrepresentation about the ownership of the debt in order to collect Plaintiff's debt would also constitute using "false representation or deceptive means to collect or attempt to collect any debt . . .," in violation of 15 U.S.C. § 1692e(10).

Plaintiff also alleges that Defendants violated 15 U.S.C. § 1692e(6), which prohibits debt collectors from falsely representing "that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to . . . become subject to any practice prohibited by this subchapter." Specifically, Plaintiff alleges that Defendants falsely stated that her property was sold to Baltax and that "Baltax had the right to foreclose the redemption of the [p]roperty." (Compl. ¶¶ 20–21.) This representation plausibly qualifies as a false statement about the transfer of interest in a debt (namely, the municipal lien) within the meaning of § 1692e(6). Plaintiff further alleges that Defendants' allegedly false statement about Baltax's ownership of the property and debt caused Defendants to collect money not legally owed to them through her mortgage servicer. (*Id.* ¶¶ 20–23.) Such behavior would be in violation of § 1692e(10), concerning false representations used to collect debt. Accordingly, Plaintiff states a claim for violation of 15 U.S.C. § 1692e(6).

Therefore, Defendants' motion to dismiss Plaintiff's claims under 15 U.S.C. § 1692e(2), (4), (5), (6) and (10) will be denied.

The remaining alleged violation of 15 U.S.C. § 1692e relates to subsection (9). This provision prohibits using "written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval." 15 U.S.C. § 1692e(9). Plaintiff offers no facts in support of her claim that Defendants violated this

provision. Accordingly, Defendants' motion to dismiss will be granted with respect to Plaintiff's claims under § 1692e(9).

In summary, the Court will grant Defendants' motion to dismiss as it relates to claims under § 1692e(9), but will deny Defendants' motion to dismiss as it relates to 15 U.S.C. § 1692e(2), (4), (5), (6), and (10).

Plaintiff also claims that Defendants violated § 1692f, which states "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." (Compl. ¶ 33.) This section "does not define 'unfair or unconscionable,' but it does provide a non-exhaustive list of conduct that violates the section." *Hauk v. LVNV Funding, LLC*, 749 F.Supp.2d 358, 366 (D.Md. 2010). This section "'provide[s] a cause of action for conduct that is not specifically listed in that section or other provision of FDCPA.'" *Stewart*, 859 F. Supp. 2d at 765 (quoting *Foti v. NCO Fin. Sys.*, 424 F. Supp. 2d 643, 667 (S.D.N.Y.2006)). Accordingly, to properly plead a claim under § 1692f, the plaintiff must allege "separate facts" than those supporting a claim under § 1692e. *Id.* at 765.

Here, Plaintiff does not provide separate facts to support a claim under § 1692f, but rather merely lists § 1692f as one of many FDCPA provisions that were allegedly violated by Defendants. Because Plaintiff fails to allege facts separate from those supporting her claims under § 1692e, Plaintiff's claim for violation of § 1692f will be dismissed.

### b. *MCALA Violation*

Plaintiff also claims that Defendants violated the MCALA, a Maryland statute prohibiting a person from "knowingly and willingly do[ing] business as a collection agency in [Maryland] unless the person has a license," Md. Code Ann., Bus. Reg., § 7-401(a) ("B.R."). (Compl. ¶¶ 26–32.) If Defendants were required to have a license under MCALA and sought to collect debt

without one, it could constitute a violation of the FDCPA and the MDCPA. *See Fontell v. Hassett*, 870 F. Supp. 2d 395, 410 (D. Md. 2012); *see also Finch v. LVNV Funding LLC*, 71 A.3d 193, 199 (Md. Ct. Spec. App. 2013) ("[A] judgment obtained by an unlicensed collection agency is void.").

As a preliminary matter, lawyers are expressly excluded from the MCALA. The MCALA does not apply to "a lawyer who is collecting a debt for a client," unless that lawyer has an employee who is not a lawyer and "is engaged primarily to solicit debts for collection or primarily makes contact with a debtor to collect or adjust a debt through a procedure identified with the operation of a collection agency." B.R. § 7-102(9). Plaintiff has alleged no facts indicating this exception applies to Mr. Naiman or the Naiman Firm, the lawyer and law firm collecting debt for Baltax. Therefore, the Plaintiff fails to plausibly allege that Mr. Naiman and the Naiman firm violated the MCALA.

The Court now considers whether Baltax is required to be licensed under the MCALA. The MCALA requires that "a person must have a license whenever the person does business as a collection agency" in Maryland. B.R. § 7-301(a). Under the statute, a collection agency is defined in part as "a person who engages directly or indirectly in the business of: (1)(i) collecting for, or soliciting from another, a consumer claim; or (ii) collecting a consumer claim the person owns, if the claim was in default when the person acquired it…" B.R. § 7-101(d). The MCALA exempts the mortgage industry from its licensing requirements. *Brooks v. Cama Self Directed IRA, LLC*, Civ. No. JKB-18-2299, 2019 WL 418412, at *7 (D. Md. Jan. 31, 2019) (citing *Blackstone v. Sharma*, 191 A.3d 1188, 1192 n.3 (Md. 2018)).

Defendants argue that Baltax is not required to be licensed under the MCALA solely because it is a security interest enforcer. (Mot. Dismiss. Mem. at 8–9.) In support of this argument, defendants cite to the decision of the Maryland Court of Appeals in *Blackstone v. Sharma*, 191

13

A.3d 1188 (Md. 2018). Plaintiff argues in response that *Sharma*'s holding applies only to foreign statutory trusts (Opp'n Mot. Dismiss at 13–15.). Both parties are incorrect. *Sharma* makes no holding about security interest enforcers in general. Instead, *Sharma* has two holdings: (1) "foreign statutory trusts [do not need to] obtain a collection agency license under MCALA before its substitute trustees file a foreclosure action in circuit court," 191 A.3d at 1223; and (2) MCALA's licensing scheme does not apply to the mortgage industry, 191 A.3d at 1192 n.3.

In support of her argument that the MCALA applies to Baltax, Plaintiff notes that the Maryland Court of Appeals in *Sharma* expressly declined to reach the question of "whether instituting a foreclosure action constitutes 'debt collection' under MCALA" when a party other than a statutory foreign trust owns a loan. (Opp'n Mot. Dismiss at 14 (quoting *Sharma*, 191 A.3d at 1192 n.3).) While that is correct, the Maryland Court of Appeals also found that, instead of relying on the MCALA, "the General Assembly ha[s] chosen an entirely different method of regulating real property foreclosures." *LVNV Funding LLC v. Finch*, 207 A.3d 202, 211 (Md. 2019). In *Sharma*, the court found that subsequent legislation expanded consumer protections and increased regulation of the foreclosure process and mortgage industry following the Great Recession, but "never mentioned or discussed MCALA or any requirements for a collection agency license." 191 A.3d at 1219–20. The court concluded:

> The complete absence of any discussion of MCALA or collection agencies when the legislature considered the problem of rising foreclosure rates as well as bad practices by certain actors within the mortgage industry persuades this Court that the General Assembly did not intend to license one of the mortgage industry actors, foreign statutory trusts, under MCALA.

*Id.* at 1220.

The parties do not address the issue of whether Baltax is exempt from the MCALA because the action Plaintiff complains of concerns solely a foreclosure of the right of redemption to real

14

property and the collection of fees from Plaintiff's mortgage servicer in relation to that action. Plaintiff describes Baltax as a company that "has filed hundreds of tax sale foreclosure lawsuits." (Compl. ¶ 28.) This Court can find no case law, and the parties identify none, which applies the MCALA to a party who attempts to foreclose a property owner's right of redemption based on a municipal lien, or who collects fees associated with such a lawsuit from the property owner's mortgage servicer. The court in *Sharma* expressly identified mortgage servicers as members of the mortgage industry, which the court found was excluded from the MCALA. 191 A.3d at 1219 (recognizing mortgage servicers as part of the "current mortgage industry model"). The Court of Appeals has previously "analogized the rights of a tax sale holder to a mortgagee." *Magraw v. Dillow*, 671 A.2d 485, 491 (Md. 1996). Determining that the MCALA applies to individuals who seek to collect claims related to real property through a mortgage servicer would seem to ignore the Court of Appeals' findings that MCALA was not intended to cover the mortgage industry or real property foreclosures.[3] It would also ignore the Court of Appeals' determination that the General Assembly intended to separate the foreclosure process and mortgage industry from regulation under the MCALA. *Sharma*, 191 A.3d at 1220. In light of the Court of Appeals' recent findings regarding the purpose and history of the MCALA, this Court declines to extend the MCALA's requirements to parties where the sole actions they are alleged to have taken is attempting to foreclose a property owner's right of redemption and collect associated fees from a mortgage servicer.

---

[3] *Fontell v. Hassett*, 870 F. Supp. 2d 395 (D. Md. 2012), does not dictate a different result. In *Fontell*, the management agent for a condominium homeowner's association filed a lien against the plaintiff for failure to pay a condominium fee. *Id.* at 400. The plaintiff argued that the management company should have been licensed under the MCALA, and the court agreed. *Id.* at 408. Not only does this case pre-date *Sharma*, 191 A.3d 1188, but it also does not involve a foreclosure lawsuit. In *Fontell*, the court found that the management agency was acting as a collection agency under MCALA when it "sen[t] collection notices and fil[ed] a lien on Plaintiff's property." *Id.* at 409. Here, in contrast, Plaintiff challenges Defendants' attempt to foreclose her right of redemption to real property through the court system and collect fees related to that action from her mortgage servicer.

15

Accordingly, this Court concludes that Plaintiff fails to plausibly allege that Baltax was required to hold a license under the MCALA. Therefore, Plaintiffs' claims under Counts I and II predicated on the lack of a legal right to foreclose due to MCALA licensure will be dismissed.

### B. Maryland Consumer Debt Collection Act (MCDCA) (Count I)

Plaintiff also brings a claim under the MCDCA based on the same facts underlying her FDCPA claim. Because Plaintiff failed to adequately plead that Defendants knew their misstatements regarding Baltax's purported property ownership and legal rights were false, this claim fails.[4]

Plaintiff alleges Defendants violated multiple provisions of the MCDCA. Specifically, she alleges Defendant violated the Act while collecting or attempting to collect debt by: "[c]ommunicat[ing] with the debtor or a person related to him with the frequency, at the unusual hours, or in any other manner as reasonably can be expected to abuse or harass the debtor," Md. Code. Ann., Com. Law. § 14-202(6); "[c]laim[ing], attempt[ing], or threaten[ing] to enforce a right with knowledge that the right does not exist," § 14-202(8); and "[u]s[ing] a communication which simulates legal or judicial process or gives the appearance of being authorized, issued, or approved by a government, governmental agency, or lawyer when it is not," § 14-202(9).

Plaintiff's claims for violations of Md. Code. Ann., Com. Law. § 14-202(6) and (9) fail because Plaintiff does not allege Defendants took any action prohibited under these provisions. As to § 14-202(6), Plaintiff makes no claims about the frequency or times of day that Defendants communicated with her or her mortgage servicer. Plaintiff also does not provide any details about the manner in which Defendants communicated with her or her mortgage servicer. The fact Defendants' communications related to an allegedly false claim of ownership does not change this

---

[4] The Court need not address the parties' arguments about whether security interest enforcers are subject to the MCDCA because Plaintiff's MCDCA claims fail on other, independent grounds.

analysis. *See Peete-Bey v. Educ. Credit Mgmt. Corp.*, Civ. No. CCB-15-272, 2017 WL 3722841, at *4 n.5 (D. Md. Aug. 29, 2017) (holding § 14-202(6) "relates exclusively to the conduct of the debt collector" as opposed to the validity of the underlying debt). Plaintiff offers no facts suggesting that Defendants engaged in any wrongdoing besides attempting to collect on a debt that they did not own. Because Plaintiff offers no facts regarding the way in which Defendants went about collecting this disputed debt, her claim under § 14-202(6) will be dismissed.

Nor does Plaintiff claim Defendants were presenting any of their communications with others, including with Plaintiff or her mortgage servicer, as official court proceedings or government documents, in violation of § 14-202(9). In fact, Plaintiff provides no information about the content of Defendants' communications with her mortgage servicer, beyond the fact that Defendants brought a foreclosure lawsuit and requested fees from her mortgage servicer in relation to that lawsuit. (Compl. ¶¶ 20–24.) Without additional facts, the Court cannot find adequate support for Plaintiff's claims that Defendants violated § 14-202(9), and the Court will dismiss this claim under § 14-202(9).

Plaintiff's claim that Defendants violated Md. Code. Ann., Com. Law. § 14-202(8) also fails because Plaintiff did not plead facts sufficient to plausibly allege that Defendants had the requisite knowledge required to violate the statute.[5] Under the MCDCA, a debt collector may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist[.]" Md. Code. Ann., Com. Law. § 14-202(8). Defendants must have acted with "knowledge as to the

---

[5] This court has previously noted a "potential tension in this district's case law" about whether the MCDCA is concerned only with a debt collector's conduct or whether it also concerns issues regarding the underlying debt's validity. *Peete-Bey*, 2017 WL 3722841, at *4 n.5. *Compare Fontell*, 870 F. Supp. 2d at 405 ("The MCDCA, and in particular § 14-202, is meant to proscribe certain *methods* of debt collection and is not a mechanism for attacking the validity of the debt itself."), *with Stewart*, 859 F. Supp. 2d at 769 ("the express language of the MCDCA requires that Plaintiffs allege that Defendants acted with knowledge as to the *invalidity* of the debt."). The Court need not attempt to resolve this issue here, because even if the MCDCA permits a plaintiff to challenge the validity of the underlying debt, Plaintiff's claim would still fail because she fails to plausibly plead Defendants had the requisite knowledge required under Md. Code. Ann., Com. Law. § 14-202(8). *See infra.* pp. 18–19.

*invalidity* of the debt." *Stewart*, 859 F. Supp. 2d at 769; *see also Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 464 (D. Md. 2013) (rejecting MCDCA claims based on procedural errors in "collecting legitimate, undisputed debts"). "[K]nowledge can either mean actual knowledge or that the defendant acted with reckless disregard." *Stewart*, 859 F. Supp. 2d at 769 (citing *Akalwadi v. Risk Mgmt. Alts., Inc.*, 336 F. Supp. 2d 492, 511 (D. Md. 2004)). A "broad assertion" of knowledge without "facts in support of [the] allegation" is insufficient under the MCDCA. *Cooke v. Carrington Mortg. Servs.*, Civ. No. TDC-18-0205, 2018 WL 6323116, at *6 (D. Md. Dec. 3, 2018). Though the MCDCA requires the defendant to have "knowledge" that he has no right to enforce the debt, a mistake of law does not negate MCDCA liability. *See Fontell*, 870 F. Supp. 2d at 407 ("[If] Defendants' ignorance . . . was a mistake of law, their professed lack of knowledge would not save them from liability[.]").

This claim is subject to Fed. R. Civ. P. 9(b)'s heightened pleading standard. *Amenu-El v. Select Portfolio Servs.*, Civ. No. RDB-17-2008, 2017 WL 4404428, at *4 (D. Md. Oct. 4, 2017). This provision states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Although "knowledge and intent may be averred generally, this Court has consistently held that . . . allegations [must] have enough factual support to be at least plausible." *Zervos v. Ocwen Loan Servicing, LLC*, Civ. No. JKB-11-3757, 2012 WL 1107689, at *5 (D. Md. Mar. 29, 2012) (internal quotations omitted).

Here, Plaintiff asserts that Defendants "knew" it was false that: (1) Baltax bought Plaintiff's property on May 15, 2017, (Compl. ¶ 20); (2) Baltax had the right to foreclose the redemption of Plaintiff's property and "the right to have title to the Property vested in Baltax," (*Id.* ¶¶ 21, 22); and (3) Defendants had a legal right to collect claims owed by Plaintiff, (*Id.* ¶ 30). But

nowhere does Plaintiff provide facts supporting the assertion that Defendants knew Baltax did not own the property or have a legal right to it. Though Plaintiff is not required to lay out every fact supporting her claims at the motion to dismiss stage, Plaintiff must allege some facts to make it plausible that Baltax knew these statements were false. *See Lewis v. McCabe, Weisberg & Conway, LLC*, Civ. No. DKC-13-1561, 2015 WL 1522840, at *5 (D. Md. Apr. 1, 2015) ("The conclusory allegation that McCabe did not have a right to foreclose and that it knew it had no right to foreclose because 'Defendants were not in possession of the original Note,' is insufficient to plead a plausible violation of Section 14202(8) of the MCDCA..."). Plaintiff provides no additional facts in support of why Defendants had actual knowledge these statements were false, or that Defendants acted with reckless disregard as to their truth. Such conclusory language is insufficient to meet the plausibly standard at the motion to dismiss stage. *See Doe v. Va. Dep't of State Police*, 713 F.3d 745, 754 (4th Cir. 2013) ("[W]holly vague and conclusory allegations are not sufficient to withstand a motion to dismiss") (quoting *Catholic League for Religious and Civil Rights v. City and County of San Francisco*, 624 F.3d 1043, 1080 (9th Cir. 2010)).

## *IV. Conclusion*

For the foregoing reasons, an Order shall enter granting in part and denying in part the Defendants' motion to dismiss. (ECF No. 13.) The motion to dismiss will be granted with respect to all claims under Count I. The motion to dismiss will also be granted as to the following claims under Count II: (1) Plaintiff's claims for violation of §§ 1692e(9) and 1692f; and (2) Plaintiff's FDCPA claims based on the MCALA. On all other claims, the motion to dismiss is denied.

19

DATED this  /  day of  August , 2019.

BY THE COURT:

James K. Bredar
Chief Judge